IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                               No. CR 09-1758 JH

LAWRENCE ROYBAL,

        Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Lawrence Roybal, through his attorney, John F. Robbenhaar, Assistant Federal Public Defender, respectfully submits this memorandum in support of a 24-month sentence as contemplated by the terms of the Plea Agreement. Mr. Roybal and the United States entered into a Plea Agreement, pursuant to Rule 11(c)(1)(C) of the Rules of Criminal Procedure, which stipulates to a term of incarceration of 24 months. A following review of the factors set forth in 18 U.S.C. § 3553(a) supports the parties' contemplated sentence.

Sentencing is presently scheduled for February 9, 2009.

## ARGUMENT

I.     BACKGROUND AND RELEVANT FACTS OF THE CASE

Lawrence Roybal is a 47 year old, enrolled member of the Jicarilla Apache Tribe, and has lived his entire life in Dulce, New Mexico. Mr. Roybal grew up the second of five children, and when Mr. Roybal was six or seven years old, his parents left Dulce to attend school in North Dakota, leaving Mr. Roybal and his siblings with their maternal grandparents. Mr. Roybal reports that he really didn't have a relationship with his parents when he was a child, being

1

raised primarily by grandparents, aunts and uncles. When Mr. Roybal was approximately 17 years old, he resumed contact with his mother Gloria Reval, and reports that his present relationship with her is good. Mr. Roybal's mother served as a police officer with the Jicarilla Apache Police Department, while Mr. Roybal's father passed away in 2002.

When he was younger, Lawrence Roybal was an avid boxer, and became very active in the "Golden Gloves" program. Mr. Roybal participated in national boxing events, and won the State championship on two separate occasions. Indeed, in 1979, Mr. Roybal competed in the national Golden Gloves competition in Arizona, and lost in the championship match in his age-group. Counsel was informed that Mr. Roybal is the finest boxer that northern New Mexico has ever produced.

Lawrence Roybal has suffered from depression which, as he grew older, was fueled by a severe addiction to alcohol. As reflected in the records from Behavioral Health produced by counsel to the United States Probation Office[1], Mr. Roybal has numerous deep-seated psychological and physical issues. Mr. Roybal suffers from depression, borderline personality disorder, a seizure disorder, post-traumatic stress disorder, he is in constant severe pain based on a 1998 injury to his neck, and has attempted suicide on numerous occasions. Personnel at Behavioral Health have requested on numerous occasions that Mr. Roybal be taken into protective custody (for detoxification), based upon his extreme state of intoxication. In April 2002, a document filed in the Jicarilla Apache Tribal Court referred to Mr. Roybal as a "ward of

---

[1] Counsel has forwarded copies of selected mental health records obtained from the Department of Behavioral Health in Dulce, New Mexico. Based on the massive amount of records, counsel provided a random selection of records–essentially the first 25 pages or so of each of four "volumes".

the Court", while in May 2002, another Affidavit was sworn stating:

> "...I request an emergency order for protective custody for Mr. Lawrence Roybal Roybal. Officer Reval, who does periodic safety checks on Mr. Roybal, stated that he has had a severe relapse. Mr. Roybal has a history of regular hospitalizations as a result of his alcohol abuse and is Court ordered not to consume alcohol + to do daily check-ins at the Court, neither of which he is in compliance with. Mr. Roybal's current medical status puts him at grave risk of harm when consuming alcohol + historically needs a protective custody intervention to prevent such harm from re-occurring."

The "periodic safety checks" mentioned above were conducted by Mr. Roybal's mother Gloria Reval, who would typically call the police so that her son could be taken into protective custody and detoxification. Mr. Roybal's many contacts with the law throughout the past 10 years resulted from these "safety checks", with the vast majority (if not entirety) of these contacts occurring after the consumption of alcoholic beverages. It turns out that whenever Mr. Roybal would be found to be drinking by Ms. Reval or by another family member, that person would contact law enforcement to take Mr. Roybal into protective custody. Most of the tribal court charges that resulted from these contacts are disorderly conduct, public intoxication, and resisting arrest, the type of charges that one would expect from an extremely intoxicated individual.

Mr. Roybal has also attended various out– and in-patient treatment programs over the years, and at times has benefitted from these interventions. It would appear that post-release care may have been inconsistent, as after a period of sobriety, Mr. Roybal would return to consuming alcohol and repeating the same cycle (intoxication–arrest and protective custody–detoxification–release against medical advice–consumption). In June 1996, one clinical psychologist concluded:

> "Mr. Roybal continually takes risks that are potentially hazardous to his life and

needs to be committed to a long-term living arrangement in a facility that can prevent him from further abuse of alcohol or other behaviors that are life threatening according to Dr. Martinez. From my observations and assessment of Mr. Roybal, I am in agreement with Dr. Martinez' conclusions and recommendations. In view of the above, in my opinion, it is imminently clear that Mr. Roybal is in need of supervised and confined living arrangements until his mental health improves to the point that he is able to make sound judgments and responsible decisions about his safety and medical well-being."

On May 1, 2009, Mr. Roybal had been at home working on the front porch, trying to replace the decking so that his wheel-chair bound brother could spend time outside in the fresh air. Feeling depressed, Mr. Roybal had consumed alcohol for the better part of that day. As Mr. Roybal recalls, a family member had stopped by the house to check on Mr. Roybal's carpentry progress, and when the family member told Mr. Roybal the progress was not satisfactory, Mr. Roybal became upset and felt under-appreciated. Perhaps as a response to familial pressures, Mr. Roybal consumes alcohol.

It turns out that, prior to May 1, Mr. Roybal had essentially become the caregiver to his quadriplegic brother Howard. This was despite prior assurances by Mr. Roybal's mother and other siblings that they would all help out when their quadriplegic relative was returned home from the health care facility in Farmington. At first, the care was spread throughout the family. But when the others stopped assisting in the care of the disabled brother, Mr. Roybal came to feel that he was abandoned and taken advantage of. Mr. Roybal felt angry, and resorted to the use of alcohol as a response to his feelings of under-appreciation.

The officers responded to the scene on May 1, 2009, and found Lawrence Roybal standing on his front porch, extremely intoxicated and belligerent, holding a large kitchen chef knife. Throughout the lengthy interaction with the police, captured on video, Mr. Roybal tried to goad the officers into shooting him, making false starts at the officers with the knife, threatening

4

to throw the knife at them, inviting them to shoot him. The officers resisted Mr. Roybal's efforts to commit suicide by cop.

Ultimately, the officers decided that they would need to subdue Mr. Roybal, and began suiting up in raid gear. Unfortunately, this tended to increase Mr. Roybal's agitation. Mr. Roybal proceeded to cut his arm with the knife, and then rushed into the house, slamming and locking the front door behind him. The officers approached and kicked in the door, and after locating Mr. Roybal immediately pepper-sprayed him. It was at this time that Mr. Roybal threw the knife in the direction of the officers, narrowly missing Officer Wells. Mr. Roybal was taken into custody without further incident.

II.  SECTION 3553(a) ANALYSIS

Title 18, United States Code, section 3553(a) requires sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of that provision. Those purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

In the present case, the parties have agreed that a 24-month sentence is an appropriate

term of incarceration, given the unique history of Mr. Roybal and the particular facts of this case.

      a.      *Nature and Characteristics of the Defendant*

As stated above, the case stems from Mr. Roybal's attempt to commit suicide by cop. It is important to recognize that Mr. Roybal only placed himself in this position based upon his lifetime of mental health problems and extreme abuse of alcohol. When not drinking alcohol, by all accounts Mr. Roybal is a mild-mannered, caring, humorous man.[2] He is a talented carpenter and wood-worker, a devoted father and son, and a committed brother. Mr. Roybal was also a special athlete, as displayed by his successes as a Golden Gloves boxer in the 1970s.

Mr. Roybal has only been in trouble with the law when he has consumed alcohol. The "safety checks" undertaken by Ms. Reval and other family members generally result in police intervention, and once contact is made, Mr. Roybal would often react against being removed from the house. Were one to remove alcohol from Mr. Roybal's life, one may fairly conclude that Mr. Roybal would not be contacted by the law. In terms of nature and characteristics, Mr. Roybal is a respectful, passive individual who struggles with an inner demon.

      b.      *Seriousness of the Offense, Respect for Law, Just Punishment*

A sentence imposed must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). These purposes are generally referred to as "retribution". Retributive theory contains three central components: First, retribution considers only the past actions of the defendant and not his/her probable future

---

[2] Counsel has spoken at length with caseworker Gary McConnell at Behavioral Health, who has known and worked with Mr. Roybal and his family for many years. Mr. McConnell reports that Mr. Roybal is not a violent or aggressive person by nature, but only comes into contact with the law after consuming alcohol.

conduct; second, retribution examines the defendant's degree of blameworthiness for his or her past actions, focusing on the offense being sentenced; third, retribution examines the nature and seriousness of the harm caused or threatened by the crime, the defendant's degree of culpability and in particular, his degree of intent, his motives, his role in the offense, and any mental illness of other diminished capacity. *See* Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn.L.Rev. 571, 590 (February 2005).

In the present case, Mr. Roybal acknowledges that the act of throwing a knife in the direction of the officers is a serious offense, and recognizes that there must be consequences for his conduct. Mr. Roybal does not have clear memories of the incident, but does remember the officers breaking through the front door and pepper-spraying him. Mr. Roybal understands that by placing himself and others in this position, he is deserving of punishment. In order to avoid this situation in the future, Mr. Roybal sees that he must avoid alcohol. A 24-month sentence, with its forced-sobriety, is sufficient to allow Mr. Roybal to better understand the depth of his problem and perhaps gain insight into how to avoid repeating similar self-destructive behavior in the future. A 24-month sentence certainly provides ample retribution against Mr. Roybal.

    c.    *Deterrence to Criminal Conduct*

Section 3553(a)(2)(B) directs judges to consider "the need for the sentence imposed... to afford adequate deterrence to criminal conduct." In order to establish "the need" for specific sentences which would therefore create adequate deterrence, one would presume that empirical evidence would be relied upon. Furthermore, one would presume that the longer the sentence, the greater the effect in general and specific deterrence. The empirical research, however, does

not support this presumption. Three National Academy of Science panels concluded that increases in sentence length have no effect on reducing crime through added deterrence. *See* Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A review of Research 28-29 (2006).

Thus, in terms of fashioning a sentence that complies with section 3553(a)'s requirement that a sentence affords deterrence to criminal conduct, a longer sentence does not necessarily achieve that goal. In the instant case, the parties have agreed to a 24-month sentence which in itself is a lengthy sentence. A two year sentence will clearly send a strong signal to Mr. Roybal and therefore provide ample deterrence to future transgressions by this individual.

      d.      *Protection of the Public*

Section 3553(a)(2)(C) requires judges to consider "the need for the sentence imposed ... to protect the public from further crimes of the defendant." Risk of recidivism and the danger posed by the defendant are factors to be considered. The Guidelines recommend prison in most cases, even for first time offenders, and therefore do not recognize the differences in risk of recidivism or the efficacy of rehabilitation. Two years of incarceration will certainly protect the public, and will likely drive home the message to Mr. Roybal that he must abstain from alcohol. As in most cases, eventually Mr. Roybal must reintegrate back into society; he will return to Dulce once he commences any term of supervised release imposed by this court. While there will always be a risk that Mr. Roybal will resume drinking alcohol, it is hoped that the two-plus year period of forced abstinence will afford Mr. Roybal valuable insight into his problems. It is hoped that the risk of recidivistic behavior will be lessened. Consequently, given the unique nature of this case, a 24-month will protect the public as well as any other sentence.

8

III.     CONCLUSION

Lawrence Roybal appears before this Court for sentencing for conduct that regretfully not only placed his own life and well-being in jeopardy, but also the well-being of the officers of the Jicarilla Apache Police Department. Mr. Roybal's unique personal circumstances suggest that a 24-month sentence will sufficiently punish and deter Mr. Roybal, and protect the community. Such a sentence may be able to provide Mr. Roybal with some alcohol treatment and counseling, and provide much-needed tools in addressing his alcoholism.

The PSR suggests that Mr. Roybal's criminal history is under-represented at CHC I, and more closely resembles CHC III. This is based on the number of arrests and tribal convictions in Mr. Roybal's past. While there is no denying the fact that Mr. Roybal has been arrested and charged in tribal court on many occasions, Mr. Roybal submits that this tribal history pertains to misdemeanor conduct, much of it very old, that has resulted in punishment. Furthermore, in the present case the parties have reviewed the evidence and conducted their own investigations, have considered Mr. Roybal's psychological condition, and have agreed that a 24 month sentence is appropriate. Mr. Roybal stands in shoes that only he can fill; while he is convicted of assault with a dangerous weapon, and while he has appeared in tribal court over 100 times over the course of 29 years, no other criminal defendant has the same mental infirmities, the same family and personal background, the same physical problems. Lawrence Roybal is deserving of punishment, and while the agreed-upon sentence may be less than what the advisory guidelines would otherwise have recommended, 24 months is not *unreasonably* shorter. For Lawrence Roybal, two years is significant time. Mr. Roybal respectfully requests that the Court accept the Plea Agreement and impose sentence in accordance therein.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

   *filed electronically*
JOHN F. ROBBENHAAR, AFPD
Attorney for Defendant

I HEREBY CERTIFY THAT on
February 17, 2010, I filed the
foregoing electronically through the
CM/ECF system, which caused AUSA
Shana Pennington to be served
by electronic means, as more fully
reflected on the Notice of Electronic Filing.

   *filed electronically*
JOHN F. ROBBENHAAR